55 CCPA
### Application of Martin N. ORNITZ.
### Patent Appeal No. 7808.

United States Court of Customs and Patent Appeals.

Jan. 11, 1968.

Eugene F. Buell, Hoopes, Leonard & Buell, Pittsburgh, Pa., for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection on the prior art of claims 1 through 5 of appellant's application serial No. 183,371, filed March 29, 1962, entitled "Forming of Metals." No claim has been allowed.

The application relates to a process for producing hollow metal shapes by the explosive forming of centrifugal and static metal castings to control wall thickness and physical properties. Appellant discloses casting a tubular steel article to its approximate desired shape, allowing it to cool sufficiently to hold its shape, and then placing it in a correspondingly shaped die which has an in-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

side diameter somewhat greater than the outside diameter of the casting. With the casting closed at both ends and filled with water or other pressure transmitting liquid, a shock pulse is generated in the liquid. That is done either by detonating an explosive material which has been placed at substantially the center of the casting or by causing a high intensity electric spark discharge between electrodes placed within the casting. The shock is propagated through the liquid to the inner surface of the casting, causing it to be expanded substantially instantly to fill the die. An example is described in which the casting is deformed from an original thickness of ¼ inch to about 3/16 inch and the grain structure is changed from "as cast" to "cold worked" form having a smooth surface.

Claims 1 and 5 are representative:

1. The method of making high-strength hollow metal articles which comprises the steps of casting the desired hollow article, solidifying the casting to a degree sufficient to hold the form of the article and subjecting the article to an internal expanding shock pulse of high energy transmitted through a confined incompressible fluid filling the interior of the article.

5. The method of cold working the structure of metal castings comprising subjecting one surface thereof to a high intensity shock pulse imparted by an incompressible fluid medium and retaining the opposite surface of the casting by a rigid wall having the contour of the external surface of the metal casting.

Claim 2 adds to claim 1 the recitation that the casting "is contained in a die recess larger than the as-cast external dimensions of the casting and the cross section of the metal wall is reduced by expansion filling the die recess." It is stated in claim 3 that the method of claim 1 is carried out with the hollow article filled with a liquid and that the shock pulse is generated by detonating an explosive charge. Claim 4 differs from claim 3 in that the pulse is described as generated "by discharge of one high intensity electrical spark submerged in * * * [the] liquid."

The references are:

Samuels, "Hydroforging—a New Fabricating Technique for Tubing," Metal Progress, Vol. 77, No. 2, February 1960, pages 69–74.

Roth, "The Forming of Metals by Explosives," The Explosives Engineer, March-April, 1959, pages 52–55.

Cox et al. (Cox), "Explosive Forming," S.A.E. Reprint T 39, April 1960, pages 1–3 and Figs. 1–6.

The Tool and Manufacturing Engineer, January 1962, pages 61–68.

Samuels discloses a process in which a cast hollow cylinder is expanded inside a die by hydraulic pressure. The cast cylinder, which has been allowed to cool, is capped at the ends and the hydraulic pressure applied internally. It is a purpose of the process to refine the grain of the casting to produce a material equivalent to a wrought product in grain size and strength.

The Roth article reviews the work done in forming metals by explosives, stating that much of that work has been carried out in a water medium and referring specifically to the use of explosive forming for expanding and swaging tubing.

Cox states that cylindrical parts seem to be most adaptable to explosive forming and refers to a technique "whereby media other than water is used for transmitting the explosive energy to the material to be formed."

The article in the The Tool and Manufacturing Engineer points out that only a female die is required in explosive forming and states that the explosive energy is transmitted through a water medium, acting as a punch. It further discloses that the energy may be derived from explosives or from an electrical discharge.

The examiner and the board considered the claims unpatentable over Samuels in view of Cox, Roth or Tool and Manufacturing Engineer, "each of the auxiliary references taken individually." Thus the issue is whether the claimed invention would have been obvious to a person of ordinary skill in the art from Samuels taken in view of any of the three auxiliary references. See 35 U.S.C. § 103.

Appellant points out that Samuels, who caps the ends of his cast cylinder and applies hydraulic pressure to it internally, does not use a rapidly expanding shock wave as the working force. However, the secondary references, which relate to similar metal working techniques do use explosive force and teach working cylindrical or hollow articles. They also each disclose that water may be the force-transmitting medium. We are satisfied that those references make it obvious to use explosive means in the Samuels process. The Tool and Manufacturing Engineer additionally makes obvious the use of an electrical spark for producing a shock pulse.

Appellant's argument is directed largely to pointing out that each reference lacks a disclosure of some limitation of the appealed claims. However, the examiner and board recognized that, when they grounded the rejection on the combination with Samuels of the secondary references taken individually. Although appellant also appears to question the propriety of the combination, we are convinced that it is proper for the reasons already set forth. Since we find no feature of the claimed invention lacking when the references are considered in combination, it is apparent that there is no reversible error in the board's decision.

The decision is affirmed.

Affirmed.

SMITH, J., concurs in the result.